IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE AFLAC INC. DATA BREACH LITIGATION | * * | CONSOLIDATED LEAD CASE NO. 4:25-cv-183-CDL (Griffin) |

O R D E R

This putative class action arises from a cyberattack on Defendant Aflac Incorporated's network that impacted the personal information of approximately twenty-two million individuals. The eighteen named Plaintiffs, on behalf of a nationwide class and a California subclass, seek damages and equitable relief, alleging that Aflac failed to adequately safeguard their private information. Aflac moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 133). As explained in the following discussion: (1) Aflac's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is denied as to Aflac's facial challenge and deferred as to its factual challenge; (2) Aflac's motion to dismiss under Rule 12(b)(6) is granted as to Plaintiffs' claims pursuant to the California Consumer Privacy Act ("CCPA"), the California Confidentiality of Medical Information Act ("CMIA"), and the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"); and (3) Aflac's motion to dismiss is denied as to Plaintiffs' Georgia state law claims for negligence, negligence per se, breach of implied

contract, unjust enrichment, litigation expenses, and their claim under the federal Declaratory Judgment Act for equitable relief.

MOTION TO DISMISS STANDARDS

## I.    Motion 12(b)(1) Standard

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) can be either facial or factual.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam).  On a facial challenge to jurisdiction, a court must determine "if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction" on the face of the complaint.  *Id.* at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1983)).  Factual attacks, on the other hand, "challenge the existence of subject matter jurisdiction in fact," and "matters outside the pleadings, such as testimony and affidavits, are considered."  *Id.* (quoting *Menchaca*, 613 F.2d at 511) (internal quotation marks omitted).  District courts have been cautioned to only resolve a factual challenge "if the facts necessary to sustain jurisdiction do not implicate the merits of [a] plaintiff's cause of action."  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir 1997)).  If a jurisdictional challenge under 12(b)(1) implicates the merits of an underlying claim, the district court should treat the motion to dismiss "as

a motion for summary judgment under Rule 56 and refrain[] from deciding disputed factual issues." *Id.*

## II.  Motion 12(b)(6) Standard

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).  In resolving a motion to dismiss, the Court "may properly consider a document not referred to or attached to a complaint" if the document is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (footnote omitted).

FACTUAL BACKGROUND

Plaintiffs allege the following facts in support of their claims.  The Court must accept these allegations as true for purposes of the pending motion to dismiss for failure to state a claim and the pending motion to dismiss for lack of subject matter jurisdiction based on Defendant's facial attack.

Aflac Inc. is an insurance company that provides insurance protection to more than fifty million people worldwide.  In the ordinary course of providing insurance products and services, Aflac collects, uses, and stores its customers' and beneficiaries' personally identifying information and protected health information (collectively, "private information" or "PI"), including names, contact information, dates of birth, Social Security numbers, driver's license numbers, financial account information, health insurance information, and medical information.  The eighteen named Plaintiffs are current or former customers or beneficiaries who provided their PI to Aflac as a condition of obtaining insurance coverage.

On June 12, 2025, cybercriminals gained access to Aflac's network and obtained files containing customers' PI.  About a week later, on June 20, 2025, Aflac publicly announced that it had experienced a security incident.  Aflac disclosed that a cybercriminal group "used social engineering tactics to gain access" to its network and that it had "commenced a review of

4

potentially impacted files," which included information belonging to customers, beneficiaries, employees, agents, and other individuals in Aflac's U.S. Business.[1]

Six months later, on December 19, 2025, Aflac confirmed on its website that the private information belonging to approximately 22.65 million individuals was impacted in the breach.[2]    Aflac further disclosed that the compromised files "included names, contact information, claims information, health information, social security numbers, and/or other personal information" but noted that "not every data element [was] present for every individual."[3]   That same month Aflac began mailing notice letters to affected individuals, including Plaintiffs.   Each letter informed the recipient that, on December 4, 2025, Aflac determined the recipient's information "may have been impacted" by the cybersecurity incident and identified the categories of personal information that may have been compromised.   Am. Compl. Ex. A, Notice Letters (Dec. 19, 2025-Jan. 2, 2026), ECF No. 126-1.   Although the categories of affected information varied among

---

[1]  Am. Compl. ¶ 59 n.15, *Aflac Incorporated Discloses Cybersecurity Incident*, Aflac, https://investors.aflac.com/press-releases/press-release-details/2025/Aflac-Incorporated-Discloses-Cybersecurity-Incident/default.aspx [https://perma.cc/H77H-YTTQ] (June 20, 2025), ECF No. 126.

[2]  *Id.* ¶ 8 n.5, *Aflac Updates June 2025 Security Incident*, Aflac, https://newsroom.aflac.com/2025-12-19-Aflac-updates-June-2025-security-incident [https://perma.cc/8PZ8-3UYM] (Dec. 19, 2025).

[3]  *Id.* ¶ 62 n.17, *Update Related to the June 2025 Security Incident*, Aflac, https://www.aflac.com/docs/aflac-cyber-incident-6-24-2025.pdf [https://perma.cc/AB3V-6RXB].

recipients, each notice letter stated that no financial information, such as bank account or credit card information, was compromised in the breach.

DISCUSSION

The eighteen named Plaintiffs brought this putative class action on behalf of a nationwide class and a California subclass, contending that Aflac is liable for past and future harm resulting from the theft of their PI.  The amended complaint asserts claims for damages under Georgia common law and several state statutes along with requests for declaratory and injunctive relief.  Aflac moved to dismiss the complaint in its entirety for lack of subject matter jurisdiction under Rule 12(b)(1), contending that Plaintiffs lack standing under Article III.  Aflac also contends that, even if subject matter jurisdiction exists, the complaint should be dismissed under Rule 12(b)(6) because Plaintiffs do not allege facts to state a claim under the federal pleading standards.

## I.   Aflac's Motion Under Rule 12(b)(1)

"In order for a federal court to have jurisdiction under Article III of the Constitution, a plaintiff must have standing to bring the lawsuit."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021).  Standing under Article III requires that "1) the plaintiff has experienced an injury that is concrete and particularized and actual or imminent, 2) the defendant's conduct is the cause of the plaintiff's injury,

6

and 3) a decision by the court would likely redress the plaintiff's injury." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023). "A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing these elements by alleging facts that 'plausibly' demonstrate each element." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020)). Finally, where plaintiffs "seek to proceed as a class, only one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019). Aflac raises both facial and factual challenges to Plaintiffs' standing, and the Court addresses each in turn.

### A.   Facial Challenge

#### 1.   Standing for Retrospective Relief.

Aflac argues that the complaint does not allege facts showing that Plaintiffs suffered an Article III injury that is traceable to the data breach. "[T]o establish standing, a plaintiff's injury must be (1) concrete, (2) particularized, and (3) either actual or imminent." *Equifax*, 999 F.3d at 1261. "Evidence of a mere data breach does not, standing alone, satisfy the requirements of Article III standing." *Tsao*, 986 F.3d at 1344. But alleged facts that show a plaintiff is at a substantial risk of identity theft

7

can establish injury in fact.  *See Equifax*, 999 F.3d at 1262 (holding that plaintiffs plausibly alleged a concrete injury where hackers stole a "colossal amount of sensitive data," including Social Security numbers, names, and dates of birth, creating a substantial risk of identity theft).  Furthermore, "a plaintiff whose personal information is subject to a data breach can establish a concrete injury for purposes of Article III standing if, as a result of the breach, he experiences 'misuse' of his data in some way."  *Green-Cooper*, 73 F.4th at 889-90 (holding that plaintiffs alleged both a present injury and a substantial risk of future identity theft where hackers posted stolen credit-card data and associated PI for sale on the dark web, thus constituting "misuse" of their data for standing purposes).

Here, Plaintiffs within each proposed class allege that their sensitive PI, including their names, dates of birth, contact information, Social Security numbers, health insurance information, and medical information was exposed in the data breach and "is now in the hands of criminals."  Am. Compl. ¶¶ 3, 176, 212, 231, 249, 265, 299, 334, 352, 368, 386, 420, 436, 453, 469. Plaintiffs further allege that this information, once stolen, may be used to commit a variety of identity fraud, including opening financial accounts, obtaining loans, filing fraudulent tax returns, obtaining government benefits, and submitting false medical claims.  *Id.* ¶ 20.  Based on those allegations, Plaintiffs

8

contend they face a "heightened and substantial risk of identity theft" and have expended time and effort responding to the breach. *Id.* ¶ 165. Given the sensitive nature of the data allegedly stolen "and the unequivocal damage that can be done" with it, *Equifax*, 999 F.3d at 1262, the complaint plausibly establishes an injury based on a substantial risk of identity theft that is traceable to the data breach.

Furthermore, the complaint contains plausible allegations that the substantial risk of identity theft has already begun to materialize into actual misuse of Plaintiffs' PI. *See Green-Cooper*, 73 F.4th at 889-90. Specifically, several Plaintiffs who allege that their SSNs were compromised also allege that they received monitoring alerts following the breach that their SSNs were found on the dark web. Am. Compl. ¶¶ 176, 182, 212, 219, 386, 394. Another Plaintiff alleges that, following the breach, an unauthorized individual attempted to open an account using her PI and that her cell phone number was deleted without authorization. *Id.* ¶ 273. Another Plaintiff alleges that, months after the breach, an individual attempted to use her identity to approve an unrecognized transaction. *Id.* ¶ 327. Viewed together with the substantial risk of identity theft, these allegations of actual misuse are sufficient at the pleading stage to establish a concrete injury. Drawing all inferences in Plaintiffs' favor, the complaint also plausibly alleges that these indicia of misuse are

traceable to the data breach, since they occurred after the breach and involved categories of information – such as Social Security numbers and other personally identifying information - that could be used to facilitate the fraudulent activity alleged.[4]

### 2.    Standing for Prospective Relief.

Even though Plaintiffs plausibly allege a traceable injury as to their claims for retrospective relief, Aflac argues that they do not have standing to seek an injunction.  A "person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring" if the risk of harm is "sufficiently imminent and substantial."    *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).  Plaintiffs allege that Aflac continues to retain their sensitive PI, that such information is a frequent target of cybercriminals, and that Aflac's data-security practices remain inadequate.  Am. Compl. ¶¶ 76, 613, 615. Although Aflac points to its notice letters describing preventative measures taken following the breach, the Court must accept Plaintiffs' well-pleaded allegations as true at this stage.

---

[4] Aflac observes that several Plaintiffs allege they suffered financial harms, such as fraudulent credit and debit card charges, even though the complaint does not state that financial account information was compromised in the breach.  Having found the complaint states a plausible basis for subject matter jurisdiction, the Court need not determine at this stage whether every alleged injury is traceable to the breach.  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019) ("[A]ll that Article III requires for the claim to be justiciable is that a named plaintiff have standing.").

Those allegations plausibly establish Plaintiffs' standing to seek prospective relief to avoid imminent future harm.

Plaintiffs also adequately allege the final element for standing--that a favorable decision would redress their injuries. Because Plaintiffs' Complaint adequately alleges facts supporting the existence of each element for standing, Aflac's motion to dismiss the Complaint on its face for lack of subject matter jurisdiction is denied.

B.    Factual Challenge

Notwithstanding the facial plausibility of Plaintiffs' allegations, Aflac urges the Court to look beyond the pleadings and resolve a factual dispute about Plaintiffs' standing. Specifically, Aflac argues that Plaintiffs cannot produce evidence that they suffered injury traceable to the data breach.  To support its position, Aflac submits expert testimony opining that none of Plaintiffs' PI is currently located on the dark web and an exhibit which purports to show that one Plaintiff's email address was compromised in numerous unrelated breaches.  *See* Def.'s Mot. to Dismiss Ex. 14, Wojcieszek Decl. § I.3, ECF No. 133-16; Ex. 16, Salisbury-Jones Search Results, ECF No. 133-18.

Although a district court may consider matters outside the pleadings when resolving a factual challenge to subject-matter jurisdiction, it should be careful where the facts necessary to sustain jurisdiction implicate the merits of the plaintiff's cause

11

of action.  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).  Here, Plaintiffs' substantive claims require proof that Aflac's alleged failure to safeguard their PI caused their injuries.  Therefore, whether Plaintiffs can prove that their PI was stolen or misused as a result of the breach goes to the merits of their claims.  Because the Court should generally decline to resolve merits questions on a jurisdictional motion to dismiss, it finds it prudent not to resolve Aflac's factual jurisdictional challenge at this stage. That claim can more appropriately be decided when the parties have had an opportunity to conduct additional discovery allowing the Court to make a better assessment on the merits issues that are necessary to decide the factual jurisdictional challenge. Accordingly, Aflac's Rule 12(b)(1) motion based on a factual challenge is deferred.

## II.  Aflac's Motion Under Rule 12(b)(6)

Plaintiffs assert common law and statutory claims against Aflac, seeking damages as well as declaratory and injunctive relief.  Aflac moved to dismiss all Plaintiffs' claims, arguing that the complaint does not allege sufficient facts to show that Plaintiffs are plausibly entitled to the relief they seek.

12

A.    Common Law Claims[5]

Plaintiffs' common law claims are based upon negligence, negligence per se, breach of implied contract, and unjust enrichment. As explained in the following discussion, the Court finds Plaintiffs have alleged sufficient facts to support plausible claims under these theories.

*1. Negligence.*

To state a plausible negligence claim under Georgia law, a plaintiff must allege "the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty." *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011). Aflac first argues that Plaintiffs' negligence claim fails because they did not adequately allege injury and causation.[6] Specifically, Aflac contends Plaintiffs did not allege any injury that is cognizable under Georgia law and, even if they did,

---

[5] Sitting in Georgia, the Court applies that state's choice of law rules in this diversity action. *Wadley Crushed Stone Co., LLC v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022). That state applies the law of the place where the contract was made for contract-based claims and the law of the place where the tort was committed for tort-based claims. *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 417 S.E.2d 671, 673 (Ga. Ct. App. 1992). Plaintiffs don't allege where their contracts were created or where Aflac's torts were committed, but the parties agree that the Court may apply Georgia law in analyzing Aflac's motion to dismiss Plaintiffs' common law claims. The Court will do so here.

[6] Aflac directs its arguments about injury and causation against all of Plaintiffs' common law claims. For ease of organization, the Court addresses them here.

13

Plaintiffs have not plausibly alleged that their injuries were proximately caused by the data breach.

As the Eleventh Circuit explained, "in *Collins v. Athens Orthopedic Clinic, P.A.*, the Georgia Supreme Court recognized a cognizable injury where a criminal theft of the plaintiffs' personal data allegedly put them at an imminent and substantial risk of identity theft." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1218 (11th Cir. 2023) (citing 837 S.E.2d 310, 316-18 (Ga. 2019)).  Plaintiffs allege that cybercriminals infiltrated Aflac's systems and stole their sensitive PI.  Plaintiffs also detail the ways in which their PI, once in the hands of criminals, may be used to commit identity theft.  Accepting those allegations as true, Plaintiffs have plausibly alleged that the data breach exposed them to an imminent and substantial risk of identity theft.  Accordingly, Plaintiffs have sufficiently alleged a cognizable injury that was caused by Aflac's alleged failure to protect their data.

Aflac next argues that Plaintiffs' negligence claim fails because the complaint does not show that Aflac breached any duty to safeguard Plaintiffs' PI.  The complaint states that the PI maintained by Aflac is a valuable and frequent target of cybercriminals.  Am. Compl. ¶ 76.  Plaintiffs maintain that, against the backdrop of increasingly frequent cyberattacks, Aflac "failed to properly implement data security practices that were

14

reasonable and up to industry standards."  *Id.* ¶¶ 83-84, 157. Plaintiffs also identify numerous specific deficiencies in Aflac's data security practices, including its alleged failure to encrypt sensitive PI.  *Id.* ¶ 152.  Plaintiffs further identify specific measures Aflac allegedly should have implemented to prevent the data breach, such as employee training and use of multifactor authentication.  *Id.* ¶¶ 91-94.  Taken together, these allegations plausibly support Plaintiffs' claim that Aflac failed to exercise reasonable case in protecting their PI from the foreseeable risk of a cyberattack.  At the pleading stage, that is sufficient to allege a breach of duty.[7]  Aflac's motion to dismiss Plaintiffs' negligence claim is accordingly denied.

   *2.    Negligence Per Se.*

   Plaintiffs assert a negligence per se claim, contending that Aflac breached its duties to them under Section Five of the Federal Trade Commission Act ("FTCA"), the Health Insurance Portability and Accountability Act ("HIPAA"), and the Health Information Technology for Economic and Clinical Health Act ("HITECH") when it

---

[7] Having found the complaint adequately states a negligence claim for failure to secure Plaintiffs' PI, the Court need not address Plaintiffs' allegations that Aflac breached a duty to timely notify them of the data breach.  Aflac argues that Plaintiffs abandoned this theory of liability since they did not address it in their response to Aflac's motion to dismiss, but that is not correct, since "at the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint."  *Boyd v. Peet*, 249 F. App'x. 155, 157 (11th Cir. 2007) (per curiam) (finding that the District Court erred by concluding the plaintiff abandoned certain claims "by failing to adequately address them in his response brief").

failed to secure their PI.  "Generally, a plaintiff may assert a claim of negligence per se arising from violations of federal or state statutes as long as (1) that plaintiff falls within the class of persons the statute was intended to protect; (2) the harm complained of was the same harm the statute was intended to guard against; and (3) the violation of the statute proximately caused the plaintiff's injury."  *McLain v. Mariner Health Care, Inc.*, 631 S.E.2d 435, 437 (Ga. Ct. App. 2006).

Aflac argues that Plaintiffs' negligence per se claim must be dismissed because neither the FTCA nor HIPAA/HITECH authorize a private cause of action.  But "Georgia courts often look to federal law to determine whether a duty has been created 'by law,'" even where the federal law does not authorize a private damages action. *Tenor Cap. Partners, LLC v. Gunbroker.com, LLC*, No. 22-13911, 2026 WL 972981, at *5 (11th Cir. Apr. 10, 2026) (holding that a breach of fiduciary duty claim under Georgia law could proceed based on a duty imposed by Section 206 of the federal Investment Advisers Act, which does not authorize a private damages action); *see Wells Fargo Bank, N.A. v. Jenkins*, 744 S.E.2d 686, 687-88 (Ga. 2013) (provision of the federal Gramm-Leach-Bliley Act, which contained "no private right of action," could not support a negligence per se claim under Georgia law only because the provision was a policy statement and did not describe "a legal duty with some ascertainable standard of conduct"); *Dupree v. Keller Indus.,*

16

*Inc.*, 404 S.E.2d 291, 294 (Ga. Ct. App. 1991) (OSHA regulations may supply evidence of a legal duty on a negligence per se claim); *Legacy Acad., Inc. v. Mamilove, LLC*, 761 S.E.2d 880, 892-93 (Ga. Ct. App. 2014) (Plaintiff could pursue a negligence per se claim based on Defendant's violations of FTC Rules), *aff'd in part and rev'd in part on other grounds*, 771 S.E.2d 868 (Ga. 2015).

The Court acknowledges the potential inconsistency in allowing a state law claim to proceed based upon a violation of a federal statutory duty when Congress has determined that a breach of that duty does not give rise to a civil cause of action under the federal statute that arguably imposes that duty. Def.'s Reply to Pls.' Resp. 14, ECF No. 144. But Georgia law, which arguably controls the parameters of the state law claims here, authorizes consideration of federal statutory duties as a basis for a state law negligence claim. *See Pulte Home v. Simerly*, 746 S.E.2d 173, 179 (Ga. Ct. App. 2013) (duties imposed by federal Clean Water Act may form the basis of negligence per se claim). Consequently, the Court is not yet convinced at this early stage of the proceedings that Plaintiffs are prohibited from pointing to federal law to establish a duty to support a state law claim for negligence. Accordingly, the Court declines to dismiss at the pleading stage Plaintiffs' state law negligence per se claim based on violations of the FTCA and HIPAA/HITECH.

*3.    Breach of Implied Contract.*

Plaintiffs bring a claim against Aflac for the breach of an implied contract for data security services.  "A contract is an agreement between two or more parties for the doing or not doing of some specified thing."  O.C.G.A. § 13-1-1.  "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."  O.C.G.A. § 13-3-1.  "Contracts implied in fact depend upon the will of the parties to be bound, indicated . . . by circumstances from which assent may be inferred as a conclusion of fact."  *Bland v. Urology of Greater Atlanta, LLC*, 921 S.E.2d 779, 786 (Ga. Ct. App. 2025) (quoting *Butts Cnty. v. Jackson Banking Co.*, 60 S.E. 149, 152 (Ga. 1908)).  Aflac argues that Plaintiffs have not alleged facts that show the parties mutually agreed to form an implied-in-fact contract for data security.

The present question for the Court is whether Plaintiffs' complaint alleges sufficient facts from which the Court can plausibly conclude that they will be able to "introduce evidence of 'circumstances from which assent may be inferred as a conclusion of fact.'"  *Id.* at 787 (quoting *Butts Cnty.*, 60 S.E. at 152).  "[T]o enforce a specific contract provision, a party must demonstrate a 'meeting of the minds' as to the key contract

18

provisions." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1221 (11th Cir. 2023) (quoting *Iraola & CIA., S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1285 (11th Cir. 2003)).  The complaint here repeatedly alleges that Plaintiffs "reasonably expected," "underst[ood]," or "believed" that Aflac would safeguard their PI. *See, e.g.*, Am. Compl. ¶¶ 173, 496, 550.  In support of their reasonable expectations, Plaintiffs point to the representations Aflac made about its data security practices on its "Fraud & Security" and "Privacy Policy" webpages.  *Id.* ¶¶ 53-54. Allegations that plaintiffs relied on statements in a defendant's privacy policy about data security may, in some circumstances, support a finding that the parties' bargain included an implied promise to safeguard their data.  *See Bland*, 921 S.E.2d at 786-87 (finding plaintiffs stated a breach of implied contract claim where they alleged reliance on defendant's privacy notice in providing their personal information).  Plaintiffs suggest that the Court should make the following reasonable inference from its factual allegations: When an insurer requires an insured to provide personal identifying information as part of the express bargain between the parties, the insurer, in exchange for the premiums paid by the insured, agrees expressly to pay a covered claim *and* additionally at least impliedly agrees to reasonably protect the

19

insured's personal identifying information that the insurer finds necessary to collect as part of the express insurance bargain.[8]

The Court finds that Plaintiffs' allegations and reasonable inferences from those allegations nudge the claim here over the plausibility line.  *Cf. Ramirez*, 69 F.4th at 1221 (affirming dismissal of breach of implied contract claim where Plaintiff failed to allege any facts from which the Court "could infer [Defendant] agreed to be bound" by any data protection policy). Accordingly, Aflac's motion to dismiss Plaintiffs' implied contract claim is denied.

   4.    *Unjust Enrichment.*

In the alternative to their breach of implied contract claim, Plaintiffs assert a claim for unjust enrichment.  "The theory of unjust enrichment applies when there is no legal contract and when

---

[8] Aflac argues that the merger clause in Plaintiffs' written insurance policies bars their implied contract claim.  The merger rule, however, applies only where the prior and final agreements cover the same subject matter. *See Health Serv. Centers, Inc. v. Boddy*, 359 S.E.2d 659, 661 (Ga. 1987) ("The rational basis for the merger rule is that where parties enter into a final contract all prior negotiations, understandings, and agreements '*on the same subject*' are merged into the final contract, and are accordingly extinguished.")  (quoting *Holmes v. Worthey*, 282 S.E.2d 919, 923 (Ga. Ct. App. 1981)).  The question here is whether the implicit agreement that Aflac would take reasonable steps to protect Plaintiffs' PI can be extinguished by a merger clause focused upon Aflac's obligations under its insurance policies issued to Plaintiffs.  Because this alleged implied agreement to protect Plaintiffs' PI concerns an obligation distinct from the subject matter of the express insurance policies, the Court cannot conclude at this stage that the merger clause in the insurance contract extinguishes Aflac's implied agreement to protect Plaintiffs' PI.

there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Tidikis v. Network for Med. Commc'ns & Rsch. LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) (quoting *Smith Svc. Oil Co. v. Parker*, 549 S.E.2d 485, 487 (Ga. Ct. App. 2001)).   Aflac argues that the unjust enrichment claim should be dismissed because the complaint does not allege that Plaintiffs conferred any benefit on Aflac that would be inequitable for it to retain.

Plaintiffs respond that they were denied the benefit of their bargain because they allege that a portion of the insurance premiums paid to Aflac "were intended to be used to fund adequate data security."  Am. Compl. ¶ 170.  In support of their argument, Plaintiffs rely on *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012), where the Eleventh Circuit, applying Florida law, held that plaintiffs adequately alleged a cause of action for unjust enrichment after asserting that the defendant used a portion of their monthly insurance premiums to fund the administrative costs of data security that they did not receive.   While Plaintiffs' allegations here are admittedly light on specific facts regarding the relationship between their premiums and measures used to protect their PI, the Court finds that such information is likely in the exclusive control of Aflac.   Given Plaintiffs' allegations plus a dose of common sense, i.e, premium revenue likely covers overhead costs, the Court finds it plausible

21

that discovery may reveal such evidence.  Thus, the Court finds that dismissal at this stage is not appropriate.  Accordingly, Aflac's motion to dismiss Plaintiffs' unjust enrichment claim is denied.

### B.   Statutory Claims

The complaint also asserts claims on behalf of the California subclass for violations of the California Consumer Privacy Act ("CCPA") and the California Confidentiality of Medical Information Act ("CMIA").  The nationwide class also brings claims under the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") and for attorneys' fees and expenses under O.C.G.A. § 13-6-11.

In its response brief in opposition to Aflac's motion to dismiss, Plaintiffs "elect[ed] to discontinue" their claims under the CMIA and GUDTPA but ask the Court to dismiss those claims without prejudice.  Pls.' Resp. to Def.'s Mot. to Dismiss 49, ECF No. 139.  The Court dismisses those claims without prejudice.  If Plaintiffs seek to add those claims later, they must file a motion to do so, and the Court will decide whether to allow the claims at that time.

### 1.   CCPA Claim.

On behalf of the California subclass, three named Plaintiffs bring a claim against Aflac under the CCPA.  That law provides a cause of action for a consumer "whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access

22

and exfiltration, theft, or disclosure as a result of the business'

violation of the duty to implement and maintain reasonable security

procedures[.]"  Cal. Civ. Code § 1798.150(a)(1).  Aflac argues

that Plaintiffs' claim is barred under § 1798.145(c)(1)(A) of the

statute, which exempts "protected health information" ("PHI") that

is  collected  by  an  entity  covered  under  HIPAA.   HIPAA's

implementing regulations define PHI as "individually identifiable

health  information"  that  is  transmitted  or  maintained  in

electronic media or any other form or medium.  45 C.F.R. § 160.103.

HIPAA defines "individually identifiable health information" as:

> any  information,  including  demographic  information collected from an individual, that—
>
>> (A)  is  created  or  received  by  a  health  care provider, health plan, employer, or health care clearinghouse; and
>>
>> (B)  relates  to  the  past,  present,  or  future physical  or  mental  health  or  condition  of  an individual,  the  provision  of  health  care  to  an individual, or the past, present, or future payment for the provision of health care to an individual, and—
>>
>>> (i) identifies the individual; or
>>>
>>> (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6); *see also* 45 C.F.R. § 160.103.

The complaint alleges that Aflac "is a covered entity under

HIPAA" and that "[s]ome or all of the healthcare and/or medical

information at issue in this case constitutes 'protected health

information' within the meaning of HIPAA." Am. Compl. ¶¶ 109, 502. Plaintiffs nevertheless argue that the CCPA exemption does not apply because certain categories of information they provided to Aflac – such as names, contact information, and Social Security numbers - do not qualify as PHI. This argument is contrary to the plain language of HIPAA and its regulations, which expressly provide that individually identifiable health information includes demographic information that identifies an individual or provides a reasonable basis to do so. When, as Plaintiffs allege here, that identifying information is collected by a HIPAA-covered entity in connection with providing health insurance, it constitutes PHI because it relates to the provision of, or payment for, health care. The complaint identifies no category of information that was maintained separately from, or for a purpose unrelated to, those HIPAA-regulated functions.

Because the complaint alleges that Plaintiffs gave Aflac information that falls within HIPAA's definition of PHI and identifies no information which lies outside that definition, the complaint establishes that the information Plaintiffs provided to Aflac falls within the CCPA's exemption for PHI maintained by a HIPAA-covered entity. The complaint therefore fails to state a

24

claim under the CCPA, and Aflac's motion to dismiss that claim is granted.[9]

### 2. Fees & Expenses Under O.C.G.A. § 13-6-11.

Plaintiffs assert a claim for attorneys' fees and expenses under O.C.G.A. § 13-6-11. This Georgia statutory provision provides for the recovery of litigation expenses, including attorney's fees, where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Aflac argues that Plaintiffs have not alleged facts to establish any of these elements. Plaintiffs respond that they allege facts showing that Aflac has acted in bad faith. Bad faith under § 13-6-11 "requires conduct that is generally indicative of intentional wrongdoing or of a reckless disregard of known harmful consequences and must be more than mere negligence." *Love v. McKnight*, 913 S.E.2d 614, 617 (Ga. 2025).

The Court notes at the outset that "the determination of whether there has been bad faith in support of an award pursuant to O.C.G.A. § 13-6-11 is normally an issue for a jury." *Caldwell*

---

[9] Plaintiffs argue that the CCPA's exemptions don't apply to their claim because Aflac's privacy policy recites certain rights its California insureds have under that statute. *See Privacy Policy*, Aflac, https://www.aflac.com/privacy-center/privacy-policy.aspx#california-privacy [https://perma.cc/25HA-9RMS] (Dec. 30, 2025). But that notice explicitly states that Plaintiffs' "rights under the CCPA are limited" and do not apply to information Aflac collects to provide its customers with health insurance products or services. *Id.*

25

*v. Church*, 802 S.E.2d 835, 842-43 (Ga. Ct. App. 2017) (quoting *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 780 S.E.2d 311, 326 (Ga. 2015)) (holding that it was error for the trial court to grant judgment on the pleadings on a claim under O.C.G.A. § 13-6-11).  Taken as true at this stage of the proceedings, the complaint's allegations are sufficient to state a plausible claim for expenses and attorneys' fees pursuant to O.C.G.A. § 13-6-11.  Plaintiffs allege that Aflac was "on notice" that Plaintiffs' data "was at risk of being targeted by cybercriminals" and that "extensive harm" would occur if that data was exposed in a breach.  Am. Compl. ¶ 154.  Plaintiffs further allege that Aflac "knowingly" decided to employ "deficient data security measures" that left Plaintiffs' PI unsecured.  *Id.* ¶ 630. These allegations plausibly state a claim for a failure to protect Plaintiffs' data that amounts to more than mere negligence and meets the definition of bad faith under Georgia law.  Accordingly, Aflac's motion to dismiss Plaintiffs' claim under O.C.G.A. § 13-6-11 is denied.

   C.   Claim for Equitable Relief

   Lastly, the complaint asserts a claim for equitable relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Aflac first argues that Plaintiffs' DJA claim should be dismissed because it is redundant of Plaintiffs' other claims seeking retrospective relief.  But Plaintiffs request equitable remedies for prospective

harm, including a declaration that Aflac's current data monitoring measures are inadequate and an injunction requiring Aflac to better protect their information.  Therefore, the Court denies Alfac's motion to dismiss Plaintiffs' DJA claim as redundant.

Aflac next argues that Plaintiffs do not allege facts showing that they face a sufficiently imminent risk of harm to state a claim for prospective relief.  If "a plaintiff seeks prospective relief . . . he must 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'"  *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021) (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).  As the Court concludes in today's Order, the complaint contains plausible allegations that Plaintiffs face a substantial likelihood of future harm.  *See* Am. Compl. ¶¶ 76, 613, 615 (alleging that Aflac continues to retain Plaintiffs' sensitive PI, that such information is a frequent target of cybercriminals, and that Aflac's data-security practices remain inadequate).[10]  Accordingly, Aflac's motion to dismiss Plaintiffs' claim for equitable relief under the DJA is denied.

---

[10] In arguing that Plaintiffs' claim for prospective relief should be dismissed, Aflac relies on this Court's decision to dismiss a claim for an injunction in *Schott v. Allstate Ins. Co.*, No. 4:24-CV-136 (CDL), 2025 WL 1416286, at *4-5 (M.D. Ga. May 15, 2025).  But the circumstances in *Schott,* which concerned how a defendant insurance company would interpret and apply its policies if the plaintiffs were involved in a future car accident, are not sufficiently analogous to make that decision persuasive here.

27

CONCLUSION

In summary, Aflac's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction (ECF No. 133) is denied as to Aflac's facial challenge and deferred as to its factual challenge. Aflac's motion to dismiss under Rule 12(b)(6) (ECF No. 133) is granted in part and denied in part as follows:  Aflac's motion to dismiss is granted as to Plaintiffs' claims pursuant to the CCPA, the CMIA and GUDTPA.[11]  Aflac's motion to dismiss is denied as to Plaintiffs' claims for negligence, negligence per se, breach of implied contract, unjust enrichment, litigation expenses, and equitable relief.  The parties shall confer and submit a joint proposed scheduling order in accordance with the Court's Rules 16/26 Order, which Rules 16/26 Order will be entered after the docketing of this order on Aflac's motions to dismiss.

IT IS SO ORDERED, this 12th day of August, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[11] The CMIA and GUDTPA claims are dismissed without prejudice.

28